**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**OSCAR L. WASHINGTON, SR.,**

    **Plaintiff,**

v.                                                                                    **Case No. 8:08-cv-48-T-33TBM**

**STATE OF FLORIDA DEPARTMENT
OF CHILDREN AND FAMILIES, et al.,**

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the court on referral by the Honorable Virginia M. Hernandez Covington[1] for a Report and Recommendation on the **Motion to Dismiss of Defendants, City of Hamilton Police Department, Matthew Blauvelt and Mike Lease** (Doc. 120) and Plaintiffs' response (Doc. 122).

I.

A.

On March 26, 2008, Plaintiff Washington filed the Second Amended Complaint ("Complaint") on behalf of himself and his minor children. (Doc. 45). The Complaint names the following people and entities as defendants: (1) State of Ohio Department of Jobs,

---

[1] The prior presiding district judge referred these motions to the undersigned before the reassignment of this action to District Judge Covington. *See* (Docs. 117, 121, 143, 151)

Children, and Families ("ODJCF")[2]; (2) ODJCF workers Julie Hale and Alisa Muncy; (3) City of Hamilton Police Department ("CHPD"); (4) CHPD officers Matthew Blauvelt and Mike Leafe[3] (sic); (5) Sarasota County Sheriff's Department ("SCSD"); (6) Sheriff William Balkwill; (7) State of Florida Department of Children and Families ("DCF"); (8) DCF workers Kim Kutch, Lynne Johnson, Kim Allen, Kelly Kelley, Darcy Brown, and Anne Jones; (9) Ramona Funsch; (10) Judge Charles Williams; (11) Judge Rick DeFuria; (12) Judge Lee Haworth; and (13) Jane and John Doe. The Complaint contains 57 counts against Defendants. *Id.* The claims are purportedly brought pursuant to 28 U.S.C. §2201, 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, and the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA").[4] Plaintiffs assert violations of their First, Fourth, Fifth, Thirteenth, and Fourteenth Amendment rights and violations of the state UCCJEA, as well as state assault and battery laws.[5] (Doc. 45, ¶¶ 128-243).

---

[2]The Complaint alternates between identifying this state agency as the State of Ohio Department of Jobs Children and Family or "ODJCF" and the Ohio Department of Jobs and Family Services or "ODJFS." The latter is the proper name for this agency and that is how it is identified herein.

[3]Officer Mike Lease is incorrectly referred to as Mike Leafe in the Complaint.

[4]The UCCJEA is a uniform act adopted by both Florida and Ohio. *See* Fla. Stat. § 61.501 et seq. and O.R.C. Ch. 3127. It is not entirely clear which state's law is alleged to have been violated.

[5]Plaintiffs assert that the court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343 and diversity jurisdiction under 28 U.S.C. § 1332. On the face of the Complaint, there is a lack of complete diversity and thus no jurisdiction under § 1332.

B.

The pertinent allegations from Plaintiffs' Complaint reveal that Plaintiff Oscar L. Washington Sr., was a resident of Sarasota, Florida, in 2005, and the father of K.W., O.W. Jr., and P.W., who are minors. (Doc. 45, ¶¶ 19-23). Plaintiffs allege that between August 5, 2005, and August 26, 2005, Ramona Funsch, Mr. Washington's ex-wife and mother of K.W., O.W. Jr., and P.W., and others abused the children and committed domestic violence against Plaintiffs. *Id.,* ¶ 55. Mr. Washington contacted the Florida DCF through Defendants Kutch and Johnston and reported the abuse, but neither followed up or investigated his claims. *Id.,* ¶¶ 56-57. On August 26, 2005, Mr. Washington and his children were again abused by his ex-wife.[6] *Id., ¶* 60. The following day, Plaintiffs fled to Hamilton County, Ohio, to escape the child abuse and domestic violence. Plaintiffs stayed at an emergency shelter. *Id.*, ¶ 61.

Mr. Washington alleges that, on August 29, 2005, Defendants Funsch, Kutch, Johnston, Allen, Kelley, Brown, Jones, Balkwill and/or Doe met at the Florida DCF in Sarasota, Florida, and conspired against him to take his children, deny him access to his children, and deny him access to the courts in Ohio because he is black. *Id.,* ¶ 62. Mr. Washington alleges further that Funsch and various Defendants pursued the filing of a fraudulent temporary domestic violence petition with the circuit court in Sarasota County and caused the same to be issued by Defendant Judge Haworth, again, because he is black. *Id.*, ¶¶ 63-67.

---

[6]The Complaint alleges that the abuse was committed by Mr. Washington's ex-wife, N.W.,"and their friends." The allegations are silent as to the identities of N.W. and "their friends."

On August 30, 2005, Mr. Washington enrolled his children in elementary school in Hamilton County, Ohio. *Id.*, ¶ 68. He alleges that on August 30, 2005, unnamed officials of the Florida DCF contacted the ODJCF and directed that it seize K.W, O.W. Jr., and P.W. and place them in foster care on account of Mr. Washington's race. *Id.*, ¶ 69. He also alleges that, on August 31, 2005, numerous of the Defendants in Florida and the CHPD officers Lease and Blauvelt conspired to deprive them access to each other and the courts in Ohio, again because Mr. Washington was black. *Id.*, ¶¶ 70-73.

Plaintiffs allege that on the same date, Defendant Alisa Muncy seized Mr. Washington's children while at school and unlawfully placed them in foster care. *Id.*, ¶ 75. As a result, Plaintiffs contend that the ODJFS, through Hale and Muncy, conspired with the Florida DCF, Funsch, and Judge Haworth to deprive them access to one another and to the courts of Ohio. *Id.*, ¶ 76. Plaintiffs allege that, during the course of the unlawful seizure of the children, Officers Blauvelt and Doe assaulted and battered the children. *Id.*, ¶ 223. According to Plaintiffs, certain of the Florida Defendants met in Sarasota, Florida, on September 1, 2005, to arrange for an ex parte pick-up order to secure the custody of the minor Plaintiffs. Judge Rick Defuria issued the pick-up order yet failed to have the same registered in Ohio thus depriving the Plaintiffs from access to each other and the courts in Ohio. *Id.*, ¶¶ 77-78.

Plaintiffs allege that Defendant Funsch consented to a petition for dependency on October 12, 2005, and K.W., O.W. Jr., and P.W. were adjudicated dependent. *Id.*, ¶ 80. As such, the children allege they have since been held against Mr. Washington's wishes;

deprived of their rights under the First, Fourth, Fifth, Thirteenth and Fourteenth amendments to the Constitution; and subjected to a variety of harms and economic losses. *Id.*, ¶¶ 82-108.

Concerning the CHPD, Plaintiffs allege that it and Officer Lease are guilty of "nonfeasance to properly supervise their subordinate(s), to prevent their implementing regulations of deliberate reckless and callous acts under disguise of protecting society's and minor Plaintiffs best interests, unlawfully using government resources and tax payer money of following improper procedures pursuant to the UCCJEA." *Id*., ¶ 112.

In Count 5, Plaintiffs allege that Defendants Lease, Blauvelt and Doe, acting under color of law and within the scope of their employment and in concert, "unlawfully deprived Plaintiffs of their religious belief and worship and instructions, from the Bible, administered to them by their father, . . . interfering with Plaintiffs family religious belief, ethnicity . . . causing severe injuries in the guise of protecting society's and their best interest," all in violation of their First and Fourteenth Amendment right. *Id.,* ¶ 137.

In Count 11, Plaintiffs allege Defendants Lease, Blauvelt, and Doe, acting under color of law and within the scope of their employment and in concert, "unlawfully deprived and are depriving Plaintiffs, K.W, O.W Jr., and P.W. of their rights as so that they fought with Defendants in Ohio not to be unlawfully seized away from their father or unlawfully searched by Defendants without his consent under the guise of protecting society's and minor Plaintiff's (sic) best interest . . ." in violation of their Fourth and Fourteenth amendment rights. *Id.,* ¶149.

In Count 17, Plaintiffs allege that Defendants Lease, Blauvelt and Doe, acting under color of law and within the scope of their employment and in concert, "unlawfully deprived

and are depriving Plaintiffs K.W, O.W Jr., and P.W. of their fundamental rights to bodily integrity and autonomy, their right to be free from unlawful government intrusion and unlawful use of government resources and tax payers money to commit an unlawful act under guise of protecting society's and minor Plaintiff's best interest pursuant to their father . . ." in violation of their Fourth and Fourteenth amendments rights. *Id.*, ¶ 161.

In Count 23, Plaintiffs allege that Defendants Lease, Blauvelt and Doe, acting under color of law and within the scope of their employment and in concert, unlawfully helped "with depriving Plaintiff Mr. Washington of his procedural, substantive and fundamental due process rights of his children K.W, O.W Jr, and P.W while in the State of Ohio to access to and protection of an Ohio court under guise of protecting society's and minor Plaintiff's (sic) best interest disregarding UCCJEA proceedings . . ." in violation of his Fourteenth amendment rights. *Id.*, ¶ 173.

In Count 29, Plaintiffs allege that Defendants Lease, Blauvelt and Doe, acting under color of law and within the scope of their employment and in concert, "unlawfully help in depriving Plaintiffs of their rights to privacy in connection with their family autonomy; their liberty rights to enjoy the mutual care, company, love and companionship of one another under guise of protecting society's and minor Plaintiff's best interest, unlawfully using government resources by receiving and sending unlawful faxes pursuant to their father . . ." in violation of their Fourteenth amendment rights. *Id.,* ¶ 185.

In Count 46, Plaintiffs allege that Defendants Lease, Blauvelt and Doe, acting under color of law and within the scope of their employment and in concert with all other Defendants, "unlawfully deprived and are depriving, penalizing and deterring [Plaintiffs] for

exercising their fundamental rights to leave and enter another state, to migrate away from Child Abuse, Neglect and Domestic Violence, right to resettle, find a new job, and start a new life by helping Defendants to unlawfully travel, fly across five state lines . . . unlawfully using government resources and tax payers money breaking each state laws to commit an unlawful act. . . ." in violation of their Thirteenth and Fourteenth amendment rights. *Id.*, ¶ 219.

In Count 48, Plaintiffs allege that during the course of their seizures, Defendant Blauvelt and Doe in Ohio maliciously assaulted and battered K.W., O.W. Jr., and P.W. *Id.*, ¶ 223.

It appears that as to these preceding counts against Lease and Blauvelt, Plaintiffs seek a declaration that the Defendants have violated their rights and they also seek monetary damages, including punitive damages. (Doc. 45 at 44-45).

In Count 56, Plaintiffs sues CHPD "on behalf of all the children that will be in foster care, that are in foster care in connection to actions undertaken by CHPD officers, . . ., by virtue of official policy, custom or practice as much that CHPD implementing regulations has cause (sic) and will continue to cause the name Plaintiffs and other children to suffer tremendous harm and public humiliation as Plaintiffs have been and will continue to be subjected to the City of Hamilton, Ohio Police Department officials practice of falsification of records, unlawful seizers (sic) and violations of due process rights unless it its stopped." *Id.*, ¶ 241. On this count, Plaintiffs seek declaratory and injunctive relief as well as damages.

C.

On May 9, 2008, CHPD, Matthew Blauvelt, and Mike Lease filed their motion to dismiss (Doc. 120). Defendants move to dismiss the claims, pursuant to Fed. R. Civ. P.

7

12(b)(2) and 12(b)(6), asserting that the court is without personal jurisdiction, and, in any event, the Complaint fails to state a claim for relief. (Doc. 120). On the issue of personal jurisdiction, Defendants contend that there is no specific or general jurisdiction. According to Defendants, Plaintiffs are unable to demonstrate Defendants are within the reach of Florida's long- arm statute or that CHPD, Blauvelt, and Lease have the requisite minimum contacts to satisfy due process. The CHPD also asserts that it is not a proper defendant in this suit as it is a department of the City and not *sui juris*. *Id.* On the Rule 12(b)(6) motion, Defendants also contend that, insofar as Plaintiffs seek relief pursuant to 42 U.S.C. §§ 1981, 1985, 1986, and 1988, they fail to state a viable cause of action. In pertinent part, Defendants assert that Plaintiffs fail to allege race discrimination in relation to a contract and fail to adequately allege a conspiracy to deprive them of the equal protection of the laws on the basis of race. As for the assault and battery claim against Officers Blauvelt and Doe and as for any claim brought pursuant to § 1983, Defendants urge that the claims are barred under the applicable Ohio statute of limitations.

## II.

### A.

In circumstances such as these, a federal court may exercise jurisdiction over a defendant "only if two requirements are met: (1) the [Florida] long-arm statute, and (2) the Due Process Clause of the Fourteenth Amendment." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). A plaintiff seeking to assert jurisdiction over a nonresident defendant "initially

need only allege sufficient facts to make out a prima facie case of jurisdiction." *Posner*, 178 F.3d at 1214. However, where, as here, the defendant has supported its jurisdictional challenge with affidavits, the plaintiff "bears the burden of proving 'by affidavit the basis upon which jurisdiction may be obtained.'" *Id.* (citing *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989)). The court must accept the facts alleged in the complaint as true to the extent that they are not controverted by the defendant's affidavits. Where the parties' affidavits conflict, the court must construe all reasonable inferences in favor of the plaintiff. *Cable/Home Commc'n Corp. v. Network Prods. Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). Where the parties affidavits do not clarify the dispute, an evidentiary hearing is appropriate. *See Venetian Salami Co.*, 554 So. 2d at 502.

In deciding the reach of Florida's long-arm statute, the court is bound to adhere to the decisions of the Florida courts. *Sculptchair*, 94 F.2d at 627. In this regard, Florida's long-arm statute must be strictly construed, and the plaintiff bears the burden of proving facts which satisfy the criteria. *See id.*

B.

In addressing the jurisdictional argument, Plaintiffs urge that the Defendants, on August 31, 2005, "committed a tortious act in Florida by phone and fax, to the Sarasota County Sheriff's Department." (Doc. 122 at 8). Citing the Complaint, Plaintiffs assert the Defendants (1) negligently corresponded by phone or fax to the SCSD to further the numerous Florida Defendants' conspiracy against Mr. Washington by depriving Plaintiffs of access to one another and the courts; (2) negligently failed to provide Mr. Washington due process of law after taking unlawful custody of his minor children without appropriate

9

consideration of the UCCJEA; and (3) in concert with Defendants in Florida, caused "[Plaintiffs] as Florida residents' (sic) personal injuries and monetary losses and their being subjected to administrative, civil, and criminal proceedings" in the State of Florida." *Id.* at 10-11.  Plaintiffs maintain these same allegations satisfy the minimum contacts necessary for the court's jurisdiction and thus the motion should be denied.[7]  In legal support of their position that the Florida long-arm statute may reach out-of-state defendants who produce injury in Florida, Plaintiffs cite *Venetian Salami Co.; Carida v. Holy Cross Hosp.,* 424 So. 2d 849 (Fla. Dist. Ct. App. 1982); *Silver v. Levinson,* 648 So. 2d 240 (Fla. Dist. Ct. App. 1994); *Acquardo v. Bergeron*, 778 So. 2d 1034 (Fla. Dist. Ct. App. 2001); *Koch v. Kimball*, 710 So. 2d 5 (Fla. Dist. Ct. App. 1998); and *World-Wide Volkswagen Corp. V. Woodson*, 444 U.S. 286 (1980).

C.

In pertinent part, Florida's long-arm statute expressly provides:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

\*\*\*

(b) Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(b).

In *Wendt v. Horowitz*, 822 So. 2d 1252 (Fla. 2002), the Florida Supreme Court held that physical presence in Florida is not required to "commit a tortious act" for purposes of the

---

[7]Mr. Washington supports the motion with two affidavits essentially reciting what he believes the facts to be and restating his arguments.  *See* (Doc. 122, Exs. A & B).  These have been considered insofar as they relate to the jurisdictional issues.

10

Florida long-arm statute, and making telephonic, electronic, or written communications into Florida can constitute "committing a tortious act" such that a nonresident defendant may be subject to personal jurisdiction under this subsection of the long-arm statute if the alleged cause of action arises from the communications. *Id.* at 1260. The court, however, declined to answer the broader question of whether injury alone satisfies the requirement of § 48.193(1)(b). In *Posner,* the Eleventh Circuit held that, in the absence of a contrary decision by the Florida Supreme Court . . ., it was bound by its "firmly established precedent, which interprets subsection (1)(b) to apply to defendants committing tortious acts outside the state that cause injury in Florida." *Posner*, 178 F.3d at 1216-17. By this approach, a nonresident defendant who commits a tortious act may be reached under this subsection even though he did no physical act in Florida. Thus, section 48.193(1)(b) "encompasses conduct where the defendant acts outside Florida to directly cause injury or damage a person within the state." *Korman v. Kent*, 821 So. 2d 408, 410 (Fla. Dist. Ct. App. 2002).

Under these decisions, there must be some harm in Florida. Section 48.193(1)(b) "does not apply merely because a Florida resident suffers damages: 'If the Legislature intended for this provision to encompass all tortious acts which were complete outside Florida, but ultimately have consequences here only because a Florida resident suffers damages, we believe it would be incumbent on the Legislature to make that statutory purpose clear in the plainest language.'" *Arch Aluminum & Glass Co. v. Haney*, 964 So. 2d 228, 232 (Fla. Dist. Ct. App. 2007) (quoting *Korman*, 821 So. 2d at 411).

Here, Plaintiffs allege a conspiracy. In *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So. 2d 582, 585 (Fla. 2000), the Florida Supreme Court held that allegations of

11

conspiracy to commit price fixing in Florida against a Japanese company and others were sufficient to withstand a motion to dismiss based on personal jurisdiction grounds even where that company did not do business in Florida. In that instance, however, the court expressly found that the allegations of conspiracy to fix prices throughout the United States were sufficient to state an action for *a violation of Florida law on Florida soil*. *See id.* at 585 (emphasis added).

### III.

In a light most favorable to Plaintiffs, the alleged harms at issue derived from conduct by Officers Lease, Blauvelt and Doe, in the State of Ohio against persons then residing in Ohio. The officers alleged unauthorized seizure of the children, the separation of the children from their father that followed, the denial of religious and due process rights, the rights to travel and the alleged denial of access to the courts in Ohio, as well as the alleged assault and battery by Blauvelt and Doe, caused injury, if at all, on Ohio soil. This conclusion is not overcome by general and vague allegations that these Defendants acted in concert with officials in Florida. Furthermore, the circumstances here are significantly different from those in *Execu-Tech*. In this case, the allegations do not support that a CHPD officer conspired to commit a violation of Florida law on Florida soil. Thus, the court is obliged to conclude that, in these circumstances, the conduct of Officers Lease, Blauvelt and Doe is not within the reach of the Florida long-arm statute as asserted. However, even if it is, I further conclude that Plaintiffs also fail to satisfy the due-process prong of the analysis.

Due process requires the nonresident defendant to have sufficient minimum contacts with the forum state such that the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945); *SEC v. Carrillo*, 115 F.3d 1540 (11th Cir. 1997); *Sculptchair*, 94 F.3d at 626. In this circuit, a three-part test is applied in deciding whether the minimum contacts requirement is met: (1) the contacts must be related to the plaintiff's cause of action; (2) the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and (3) the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there. *Posner*, 178 F.3d at 1220. In determining whether the exercise of jurisdiction would offend notions of fair play and substantial justice, the court should consider the burden on the defendant of defending the suit in Florida, Florida's interest in adjudicating the suit, the plaintiff's interest in obtaining effective relief, the interests of the interstate judicial system in using resources efficiently, and the interests of the states in furthering shared substantive policies. *Id.* at 1221.

Here, in a light most favorable to Plaintiffs, someone at the CHPD, perhaps one of these officers, may have received and perhaps in like manner returned a phone call and/or facsimile from the SCSD in Florida concerning their assistance in executing a Florida court order. In response, Blauvelt or some other officer took Mr. Washington's children into custody in Ohio, purportedly in a manner in violation of various constitutional rights and the UCCJEA which worked to deny all Plaintiffs access to each other and the courts of Ohio. Thereafter, someone at CHPD notified the SCSD that the children were in state custody. Even assuming such allegations are sufficient to set forth a conspiracy with

13

Florida actors, which I dispute, the officers' conduct cannot be said to have been aimed at the State of Florida or residents of the State of Florida or constitute a violation of Florida law. Again, by Plaintiffs' allegations, they had relocated to Ohio to start a new life. In no way did these Defendants purposefully avail themselves of the privilege of conducting activities within the State of Florida or aimed at the State of Florida. In the given circumstances, I cannot agree that any CHPD officer has acted in a manner such that he reasonably should anticipate being haled into court in Florida. This is not a case where the State of Florida will, or even can, claim a significant interest in adjudicating Defendants' alleged wrongdoing in Ohio in a local forum. Obviously, requiring these Defendants' appearance here would present a significant burden upon them wholly incommensurate with their alleged conduct in Ohio. Plaintiffs are not denied a remedy on such analysis but instead must pursue their claims in Ohio if they so wish. Finally, the conclusion that there are no sufficient minimum contacts to warrant haling these Defendants into a Florida court promotes rather than harms the interstate relations between these States in the circumstances of this case. In sum, I conclude that Plaintiffs cannot satisfy the due process prong of the analysis, and this court is without personal jurisdiction over any officer of the CHPD.

To the extent that the CHPD is sued separately in Count 56, Plaintiffs' Complaint sets forth an indecipherable and wholly conclusory count purportedly seeking declaratory and injunctive relief as well as damages. In response, the CHPD raises the same jurisdictional bar and also asserts that it is not *sui juris* and thus not a proper party to the suit. By this latter contention, under Ohio law the CHPD is not an entity with the capacity

to be sued but merely an arm of the city government. By implication, the appropriate party would be the City of Hamilton. Plaintiffs urge the court cannot reach this issue on this motion.[8]

While it appears that the CHPD is not the proper entity subject to suit, the court need not reach the issue. Here, even assuming that the CHPD is a "person" in contemplation of the civil rights statutes, in suing that department, Plaintiffs rely wholly on the alleged misconduct of the CHPD officers in support of their claim against the CHPD for violations of their civil rights. As set forth above, CHPD officers may not be reached in this case under the Florida long-arm statute or upon consideration of due process principles. For the same reasons, department cannot be reached in the given circumstances. Thus, I find the court is without personal jurisdiction over the CHPD even assuming it is *sui juris*.[9]

The Defendants argue also that the actions against Officers Lease, Blauvelt and Doe brought pursuant to § 1983, as well as the claim for assault and battery against Blauvelt, are time-barred under Ohio law. In light of the conclusions above, this argument

---

[8]In response, Plaintiffs cite to Florida law which suggests that CHPD's position on the matter is well-taken but they urge that the court should limit its consideration at this stage to the allegations in the complaint. Even if this is so, it appears that under both Florida and Ohio law, the CHPD is correct. *See Fla. City Police Dep't v. Corcoran,* 661 So. 2d 409 (Fla. Dist. Ct. App. 1995)*; Richardson v. Grady*, Nos. 77381, 77403, 2000 WL 1847588 (Oh. App. Dist. Ct. 2000); *Edmonds v. Dillin*, 485 F.Supp. 722 (N.D. Ohio 1980).

[9]To the extent that the Complaint is read to allege that the CHPD is liable for the actions of its officers on a theory of vicarious liability (Doc. 45, ¶ 112), the claim fails because a municipality cannot be held vicariously liable under § 1983 solely on the basis of an employer-employee relationship with a tortfeasor. *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397 (1997).

appears well-founded but unnecessary for the court to reach. *See Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989); Ohio Rev. Code § 2305.10.[10]

Finally, I do not reach the Defendants' arguments that the Complaint fails to state a claim for relief under 42 U.S.C. §§ 1981, 1985, 1986, and 1988. Should the district judge find that the court has personal jurisdiction over these Defendants, additional consideration of the merits of those claims is in order.

IV.

Accordingly, it is recommended that the **Motion to Dismiss of Defendants, City of Hamilton Police Department, Matthew Blauvelt and Mike Lease** (Doc. 120) be **GRANTED** and the cases dismissed as to each of these Defendants.

> Respectfully submitted this 29th day
> of October 2008.

> _____
> THOMAS B. McCOUN III
> UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a

---

[10] A different conclusion might be called for under Florida law where the statute of limitations for §§ 1983 and 1985 actions and for assault and battery claims is four years. *See Chappell v. Rich*, 340 F.3d 1279 (11th Cir. 2003); Fla. Stat. § 95.11(3).

district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.


Copies furnished to:
The Honorable Virginia M. Hernandez Covington, United States District Judge
Counsel of Record